## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Newport News Division

MARISA ARNETTA MAE MANN,

      **Plaintiff,**

**v.**                                     **CIVIL ACTION NO. 4:17cv90**

NANCY A. BERRYHILL,
*Acting Commissioner of*
*Social Security*,

      **Defendant.**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Marisa Arnetta Mae Mann ("Mann") seeks judicial review of the Acting Commissioner of the Social Security's ("Commissioner") decision denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Mann claims the Administrative Law Judge ("ALJ") erred by improperly analyzing medical evidence to find Mann was not disabled in an opinion issued April 12, 2017. In support of her claim in this court, Mann has submitted additional evidence that is not included in the administrative record. This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B), and Rule 72(b) of the Federal Rules of Civil Procedure. Because the ALJ did not err in evaluating Mann's impairments and the additional evidence does not justify remand under 42 U.S.C. § 405(g), the undersigned RECOMMENDS that final decisions of the Commissioner be affirmed by GRANTING the Commissioner's Motion (ECF No. 13) and DENYING Mann's Motion (ECF No. 12).

## I.   PROCEDURAL BACKGROUND

Mann filed an application for SSI and Disability Insurance Benefits ("DIB") on September 13, 2013, alleging a disability onset date of November 6, 2010.  (R. 14, 119).  The Social Security Administration ("SSA") denied Mann's DIB claim because she had not earned sufficient work credits to qualify, (R. 122, 128), and her SSI claim because she was not "disabled or blind" under their rules.  (R. 126).  Asserting that she was "unable to work," Mann requested reconsideration of her SSI claim but did not seek further review of her DIB claim.[1]  (R. 131). The SSA affirmed the initial decision upon reconsideration, (R. 135), and Mann requested an administrative hearing, which occurred on March 7, 2017.  (R. 14).

The ALJ determined that Mann was not disabled within the meaning of the Social Security Act and denied her claim for benefits.  (R. 29).  The Appeals Council declined to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner.  (R. 1). Mann filed this action seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  This case is now before the court in order to resolve the parties' cross-motions for summary judgment.

## II.   FACTUAL BACKGROUND[2]

Mann was born in 1977, and was 33 years old at the alleged onset date of November 6, 2010, and 36 years old on the date of her application for benefits on September 13, 2013.  (R.

---

[1] Paragraph II of the form complaint Mann filed in this court indicates Mann's claim is for Disability Insurance Benefits. Compl. at 2 (ECF No. 3).  But her other pleadings dispute only her current ability to work and do not contest her eligibility for DIB.  See Compl. at 3 (ECF No. 3) & Compl. Attach. 1, p. 3 (ECF No. 3-1); Pl.'s Mot. Summ. J. (ECF No. 12).  Further, Mann's Motion for Summary Judgment urges her lack of past employment proves her inability to work for her SSI claim, supporting the SSA's determination that she is ineligible for DIB.  (ECF No. 12, at 2); (R. 310).

[2] For the reasons explained in this Report, the court looks only to the record in detailing the factual background of this case, not to the new evidence that Mann submitted with her complaint.

87).  She earned a GED, and is close to earning an associate's degree, but stopped taking courses due to trouble understanding math and financial issues.  (R. 22, 40-41).  Mann has not worked since 2006, and a prior ALJ found she had no past relevant work experience in a decision dated November 5, 2010, which was not appealed.  (R. 27).

### A.    Relevant Medical and Treatment History

Mann complains of many medical conditions, but the record reflects major complaints of pain in her back and legs, chronic headaches, dizziness, and mental impairment, which she claims prevents her from working, sitting, or standing for any significant period.  Pl's Mot. Summ. J. (ECF No. 3-1 at 1-2); (R. 21).

### 1.    Back and Spinal Treatment

The record shows Mann has complained of back pain from at least February 9, 2010, which she treated with non-steroidal anti-inflammatory drugs (NSAIDs), stretching, and yoga. (See, e.g., R. 446).  In October 2013, her treating physician ordered a lumbar spine x-ray and referred her to an orthopedist.  (R. 413).  The x-rays obtained five views of the lumbar spine, which showed degenerative disc disease at L5-S1 but "otherwise normal lumbar spine series with no acute findings."  (R. 495).  The orthopedist discussed surgery and epidural injections as treatment options, and referred Mann for further evaluation.  (R. 700).

Mann received that evaluation from Dr. Cohen, an orthopedic surgeon at VCU Medical Center, Richmond, Virginia, on February 28, 2014.  Dr. Cohen suggested three options: Ms. Mann could continue to live with the pain, attempt steroid injections, or undergo surgery as a "last resort."  (R. 725-26).  Mann elected to have an MRI performed, and a follow-up MRI on March 18, 2014, before making a decision.  (R. 725-28).  The MRIs showed "mild degenerative changes in the L4-5 disc, and . . . moderate degenerative changes in the L5-S1 disc."  (R. 728).

Specifically, the doctor noted disc herniation at both L4-5 and L5-S1 and moderate spinal stenosis at L4-5. (Id.)

Mann elected to have steroid injections, receiving one on April 16, 2014, and another on October 24, 2014. (R. 729, 731). Despite the injections, Mann continued to experience back pain, and Dr. Cohen discussed various surgical options on June 20 and September 19, 2014, as a result of severe degenerative changes, but Mann deferred any action. (R. 721, 723). Mann returned to Dr. Cohen on August 3, 2015, again complaining of back pain. Although she complained of persistent pain, Dr. Cohen noted she had 5/5 motor strength in her extremities, no sensory deficits, a negative straight leg raise test, and full range of motion in her hips without symptomatology. Dr. Cohen restated the original three options (do nothing, steroid injections, or surgery), and suggested an additional MRI to determine if her condition was worsening. (R. 719). Compared to the March 18, 2014, MRI, the new MRI had "not significantly changed." (R. 735).

In addition to these visits, Mann frequently sought treatment for back pain at other locations during the same period. While she had a restricted range of motion in her lumbar spine due to pain, (see, e.g., R. 725), and a painful straight leg raise, (see, e.g., R. 700), Mann regularly showed full strength, no sensory deficit, symmetric reflexes, and ambulated with normal gait and station. (See R. 412, 434, 616, 682, 700, 719, 721, 723, 725, 777). On June 4, 2014, Mann's primary care physician, Dr. Robertson at the Lackey Free Clinic in Yorktown, Virginia, declined to write a letter for Ms. Mann stating she was unable to work because he did not believe her back symptoms were disabling. (R. 634-35).

Over the years, Mann has treated her back pain with a variety of medications. In September 2013, she reported needing to take Naproxen twice a week, and her nurse practitioner

prescribed Cyclobenzaprine, a muscle relaxant, in addition to the Naproxen. (R. 423, 425). On March 24, 2014, Mann reported she took Naproxen once or twice a month for her back pain. (R. 638). On April 16, 2014, she received a steroidal injection for her back pain. (R. 729). Mann reported that injection did not help her pain. (R. 723). Mann received a second steroid injection on October 24, 2014. (R. 651). She testified that the second injection "hit a nerve" and "it seemed like it worked for . . . an hour" before wearing off. (R. 21, 43). On January 8, 2015, Mann reported that Naproxen was controlling her back pain. (R. 682). Mann reported taking Ibuprofen for lower back pain in May and September 2016. (R. 312, 775). Ibuprofen was the only medication for Mann's back pain on the most recent medication list submitted at the hearing level. (R. 312). Mann also testified she was only treating her back pain with Ibuprofen at the time of her hearing. (R. 43).

> 2. Headache and Dizziness Treatment

On October 2, 2012, Mann reported daily headaches that were significant once or twice a year. (R. 436). She sought treatment for a headache at Mary Immaculate Hospital's emergency department on January 27, 2013. (R. 369). In September 2013, Mann complained of daily headaches and reported visiting the hospital due to headaches twice in the last six months. (R. 423-25). On March 24, 2014, she reported having headaches once or twice a month. (R. 638) Two days later, Mann returned to the emergency department of Mary Immaculate Hospital reporting dizziness, abdominal pain, and a headache. (R. 758). Dr. Robertson noted that Mann's headaches "seem to have resolved for the most part" in June 2014. (R. 635).

In January 2015, Mann reported "having headaches 1-2 times per year since she was 17," but that her headaches had declined after she changed her diet and stopped eating meat. (R. 681). A year later, Mann returned to Mary Immaculate Hospital's emergency department a third

time, complaining of a headache. (R. 769-74). After taking a non-narcotic pain medications, her headache improved and she was discharged. (R. 772-73).

Mann's first reports show she self-treated her headaches with Vicodin she "[got] from a friend" between October 2, 2012, and January 14, 2013. (R. 433, 436). On January 27, 2013, Mann refused a prescription for Imitrex to treat her headaches, fearing the side effects. (R. 423, 428-29). Mann reported taking Aspirin for her headaches in March 24, 2014, but her nurse practitioner suggested switching to Tylenol because Mann was experiencing abdominal pain. (R. 638, 640). When she sought treatment two days later, she was given Toradol[3] and Tylenol. On Mann's last visit to the emergency department, in January 2016, she requested stronger medication than those initially recommended by her treating physician's assistant but agreed to a "non-narcotic [headache] cocktail," instead. (R. 769, 772-73). Upon discharge, she was given a prescription for Motrin. (R. 773). On the last medication list submitted for her hearing, Mann reported taking Topamax once a day for migraine prevention. (R. 312).

3. Mental Health Treatment

Mann sought mental health treatment from Catholic Charities of Hampton Roads between October 2008 and November 25, 2013. (R. 499, 515-516). In 2008, she was diagnosed with several learning issues and Major Depressive Disorder. (R. 499). Mann did not seek treatment for some diagnoses and received minimal treatment for depression when she resumed therapy in 2013. (See R. 568-80). In October 2013, she denied having depression, (see R. 411, 576; but see R. 573 (discussing her complaints of depressive symptoms)), and has not sought further medical treatment. (R. 45).

---

[3] Toradol is a brand name version of the non-steroidal anti-inflammatory and pain relieving drug ketorolac. Ketorolac, The Mayo Clinic, https://www.mayoclinic.org/drugs-supplements/ketorolac-oral-route-injection-route/description/drg-20066882 (March 1, 2017).

The therapist for Mann's initial session in September 2013 noted her appearance, speech, behavior/activity, thought, and concentration as normal; her judgment was good, and her insight was fair. (R. 569). Mann regularly arrived to scheduled appointments on time with good hygiene, appropriate dress, and a cooperative mood. (See, e.g., R. 529-30).

In 2008, Mann's Verbal IQ and full scale IQ were in the low average range, her performance IQ was average, and her Global Assessment of Function (GAF)[4] score of 60 indicated moderate functional difficulties. (R. 319-20). Her other GAF scores were consistently in the 50s or 60s, including her scores of 55 in 2013. (R. 510, 569, 580).

Despite Mann's limitations, she reported living with, and taking care of, her daughter, handling her personal care, and independently completing household chores. (R. 500).

## B.  Medical Source Opinions and Administrative Hearing

Medical source opinions from Agency consultants at both the initial and reconsideration level found that Mann had four medically determinable impairments: (1) Disorders of Muscle, Ligament and Fascia; (2) Affective Disorders; (3) Anxiety Disorders; and (4) Learning Disorder. (R. 92, 108). Both reports found that the first two impairments were "Severe," while the last two were "Non Severe." (Id.). But both also "determined that [Mann's] condition is not severe enough to keep [her] from working." (Id.).

In making this determination, the medical source opinions placed particular weight on Mann's activities of daily living (ADLs), precipitating and aggravating factors, and treatment other than medication. (R. 94, 110). Based on that evidence, the reports determined Mann's

---

[4] The DSM-V abandoned the use of GAF scores, but the SSA still examines GAF scores as medical opinion evidence. See Cantrell v. Berryhill, No. 3:16cv939, 2018 WL 1178084, at *9 (E.D. Va. Feb. 12, 2018). GAF scores should receive "little weight unless 'well supported and consistent with other evidence in the file.'" Id. (citing Soc. Sec. Admin., Global Assessment of Functioning (GAF) Evidence in Disability Adjudication, AM–13066 (July 22, 2013), revised as AM–13066–REV (Oct. 14, 2014)).

allegations were "Partially Credible." (Id.). The initial report found Mann's sustained exertional capability as medium, (R. 99), but the reconsideration report reduced her to light capability due to additional medical evidence. (R. 116). Specifically, the reconsideration report by Dr. Robert Weisberg concluded that Mann was capable of light work with some postural limitations. (R. 26, 111-15). Dr. Weisberg found Mann could occasionally lift and carry twenty pounds, sit or stand for six hours in an eight-hour workday, but was limited in stooping, climbing, crawling, and pushing and pulling due to her back pain. (R. 111-12).

At the hearing before the ALJ, Mann testified that she had not worked since 2006 and was not seeking work because of her "severe pain" and migraines. (R. 42). She alleged the severity of the pain prevented her from grocery shopping, and when she did attempt to shop, she needed "three or four days" to recover. (Id.). To treat the pain, she took 800-milligram Ibuprofen, which she "double[d] up." (R. 43). She previously treated the back pain with Vicodin, but her clinic no longer prescribed that medication. (Id.). She also tried physical therapy, but stopped when it exacerbated her back pain. (Id.).

Over the course of her treatment, Mann received two steroid injections for her back pain. (Id.). She testified that the first steroid injection "didn't help at all," and the second "seemed like it worked for . . . an hour . . . but after that . . . it didn't relieve any of the pain." (Id.). Mann testified that surgery was her only other option, and that her physician told her "at some point [she would] not be able to put it off" due to the progression of her degenerative disc disease. (R. 44). Because of her back pain, she claimed to have a limited ability to bend, rotate, walk, twist, or lift more than six pounds. (R. 45). She claimed that limited her ability to clean and shop for groceries, but admitted to performing both of those tasks regularly. (R. 44-47).

Mann also testified she occasionally experienced headaches severe enough that she sought treatment at the emergency room, and headaches that would prevent her from working once or twice a month. (R. 44-45). Finally, Mann testified that her learning disabilities were a factor in not completing her associate's degree, (R. 48), that she felt depressed because of how young she developed degenerative disc disease and the social isolation her pain caused, (R. 51), and that she had a limited ability to be around other people, including family, because of decreased tolerance when she is in pain. (R. 53).

Mann's mother, Betty Mann, also testified at the hearing. Mann's mother testified that Mann came to visit a couple of times each week, during which she would spend the majority of the time propped up in a second bedroom. (R. 57-58). During those visits, Mann would look like she was in pain and would verbally express her pain. (R. 58). Mann's mother supported Mann's testimony that her pain made her irritable and affected her relationship with others. (R. 59). She also testified that she had not seen Mann walk a significant distance or stand for a long period of time for the last three years. (R. 59-60).

A vocational expert ("VE") also testified at the hearing. (R. 61-64). The ALJ did not inquire regarding Mann's past work experience, but asked the VE whether a hypothetical individual of Mann's age, education and work background could perform

> any light work, provided that work allows the individual an opportunity to alternate positions sitting and standing on an occasional basis, would not require the performance of more than occasional postural activities with no climbing, or exposure to heights or hazards. Would not expose the individual to any environmental extremes, and would have no more than occasional contact with coworkers, supervisors, and the general public, performing only simple, repetitive, and routine tasks throughout the course of an eight-hour workday at a routine pace.

(R. 61). The VE testified such an individual could perform the jobs of a routing clerk (42,000 jobs available), a shelving helper (17,000 jobs available), or an office helper (14,000 jobs

available).  (R. 62).  However, there would be no work for an individual who needed to miss two or more days of work per month on average, required unscheduled breaks beyond those normally provided, or needed to lie down during the normal workday.  (Id.).

### III.   STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence.  42 U.S.C. § 405(g); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of New York v. NLRB, 305 U.S. 197, 229 (1938)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456.  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589.  The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390.  Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV.   ANALYSIS

To qualify for SSI under sections 1381a and 1382 of the Social Security Act, an individual must be over the age of 65, blind, or disabled; meet certain income and resource requirements; be a legal resident of the United States; and not have received Social Security benefit payments for greater than 36 months when appropriate treatment was available.  See 42 U.S.C. §§ 1381a and 1382; see also 20 C.F.R. § 416.202.

Mann appeals the SSA's determination that she was not disabled and, thus, ineligible for SSI benefits.  The Social Security Regulations define "disability" as the:

> [I]nability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a period of not less than 12 months.

20 C.F.R. § 416.905; see also 42 U.S.C. § 1382(3)(A).  To meet this definition, a claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy.  20 C.F.R. § 416.905; see also 42 U.S.C. § 1382(3)(B).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability.   The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled.  The five questions which the ALJ must answer are:

1.  Is the individual involved in substantial gainful activity?

2.  Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do the work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any other work?

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. § 416.920. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992).

When conducting this five-step analysis, the ALJ must consider: (1) the objective medical facts; (2) the diagnoses and expert medical opinions of treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age. Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967) (citing Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962). At all steps, the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d 1456.

## A.    The ALJ's Decision

Upon reaching step five of the above analysis, the ALJ determined Mann was not disabled under the Social Security Act because there was "other work . . . in substantial numbers in the national economy" that Mann was capable of performing. (R. 29). Though Mann's medical records indicate serious medical conditions, the ALJ's decision was supported by substantial evidence.

At step one, the ALJ found that Mann had not engaged in substantial gainful activity since September 23, 2013, the application date. (R. 16). At step two, the ALJ found Mann suffered from the following several severe impairments: back disorder, chronic headaches, adjustment disorder, and obesity. Id. Next, under step three, the ALJ found that Mann did not have an impairment or combination of impairments that met the severity of one of the listed impairments. (R. 18-20). The ALJ found step four inapplicable because Mann did not have any relevant past work experience. (R. 27).

Finally, the ALJ found Mann had a residual functional capacity ("RFC") that limited her to light work, as long as she could alternate between sitting and standing on an occasional basis, and the work required only occasional "postural activity." (R. 20). The ALJ further restricted Mann to jobs that require no climbing; no exposure to heights or hazards; no exposure to environmental extremes; only occasional contact with coworkers, supervisors, or the general public; and only simple, routine, repetitive tasks, performed at a routine pace throughout an 8-hour workday. (Id.). Relying on the VE's testimony, the ALJ found there was work Mann could perform and determined she was not disabled under the Social Security Act. (R. 29).

Mann's pro se pleadings do not follow the five-step analysis applied by the Commissioner, but appear to argue the ALJ erred in concluding that her conditions were not as severe as she claimed and that she was capable of performing work available in the national economy. [5]   (See ECF Nos. 3-1 & 12). Specifically, Mann alleges the ALJ failed to (1) recognize the severity of her back pain and chronic headaches and (2) properly consider her physical limitations and the VE's testimony. (ECF No. 3-1, at 1-2). In support of her claims,

---

[5] As a pro se litigant, Mann is entitled to liberal construction of her pleadings. See Miller v. Barnhart, 64 F. App'x 858, 859 (4th Cir. 2003) (unpublished) (per curiam) (citing Haines v. Kerner, 404 U.S. 519, 520–21 (1972)).

Mann also submitted additional evidence, not contained in the record examined by the SSA or the ALJ, as well as a letter from the Department of Education, which she contends is relevant as it suspends her student loan repayment due to disability. (Compare ECF No. 12, at 1, 5-8, with R. 313-783). As explained in greater detail below, Mann's claims of error in the ALJ's RFC finding lack merit, and her supplemental evidence provides no basis for remand or reversal.

**B.    The ALJ Properly Evaluated Evidence in Determining Mann's Residual Functional Capacity**

Residual functional capacity is a claimant's maximum ability to work despite their impairments. 20 C.F.R. § 416.945; see SSR 96-9p, 1996 WL 374185, at *1-*2 (July 2, 1996) ("RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis."). If a claimant's impairments do not meet or medically equal a listed impairment at step three of the ALJ's analysis, then the ALJ must determine the claimant's RFC. See 20 C.F.R. § 416.945(a)(5) & (e). If the ALJ determines that a claimant does not have any past relevant work, the ALJ uses the RFC at step five to determine whether the claimant can adjust to other work that exists in the national economy. § 416.945(a)(5)

The ALJ determines a claimant's RFC at the administrative hearing level by considering all relevant medical and other evidence in the record, including impairments based on the claimant's credible complaints. See §§ 416.945(a)(3) & (a)(5). Relevant evidence can include "information about the individual's symptoms and any 'medical source statements' - i.e., opinions about what the individual can still do despite his or her impairment(s) - submitted by an individual's treating source or other acceptable medical sources." SSR 96-9p, at *1-2.

1.    Substantial Evidence Supports The ALJ's Conclusions Regarding Mann's Back Disorder, Chronic Headaches, Mental Health Disorders, and Obesity

In her pleadings, Mann argues the ALJ erred in his determination by failing to recognize the severity of her back pain and headaches, as well as "many [other] illnesses" that she did not

define, citing privacy concerns. (ECF No. 3-1, at 1; ECF No. 12, at 2). Citing the new evidence she submitted with her complaint, Mann disputes the ALJ's finding that she can perform work in the national economy. (ECF No. 12, at 2). Because Mann did not define the "many illnesses" in her pleadings, this court evaluated the medical conditions discussed in the ALJ's decision, and the evidence in the Administrative Record related to those conditions.

To be "severe," an impairment must "significantly limit[] [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). While Mann's pleadings dispute the ALJ's conclusion of the severity of her impairments, in fact, the ALJ found that Mann's back pain, chronic headaches, adjustment disorder, and obesity were all severe impairments. (R. 16-17). This expanded the list of Mann's severe impairments from the medical source opinions to include chronic headaches and obesity. (See R. 92, 108).

An impairment is not severe if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to do work." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984). Consistent with the medical evidence, the ALJ found Mann's learning disorders and certain other mental health disorders to be not severe. The ALJ determined Mann's learning disorders were non-severe because Mann obtained her GED, completed coursework at a community college, and could perform basic math skills. (R. 17). Mann's other mental health disorders were determined non-severe because she had not sought treatment for the disorders for several years, denied being affected by them any longer, or was able to effectively cope with the symptoms. (Id.). These findings were supported by Mann's testimony, (R. 40-41, 45), and her medical record. (R. 411, 438, 498-594).

The ALJ also determined several other conditions, not mentioned by any of Mann claims or the medical source opinions, were non-severe because they were "responsive to medication,

[did] not require any significant medical treatment, or [did] not result in any continuous exertional or nonexertional functional limitations." (R. 17-18; see also R. 312, 322-407, 436, 438, 634, 682, 775-779). However, because four of Mann's medical impairments were severe, the ALJ continued to the third step: determining if any of Mann's impairments met or equaled a listed impairment on Appendix 1.

Mann mistakenly asserted the ALJ did not evaluate her headaches in his analysis because they were not a part of "his books," which this court takes to mean the listed impairments in Appendix 1. (ECF No. 3-1, at 2). The ALJ noted that headaches were not "specifically listed" in the Appendix, despite "giving particular attention to Listing 11.02." (R. 18). But it is incorrect to state that the opinion failed to analyze the medical evidence of headaches because it evaluated Mann's headaches in assessing her RFC.

The ALJ similarly could not find medically equal listings for Mann's other severe impairments. (Id.). He noted Mann's obesity was not medically equal to a listing by itself, but considered its effect on her other impairments. (Id.). He also provided a detailed summary of the weight he assigned to each source of evidence in considering Mann's back disorder and any individual, or combination of her mental impairments. (R. 18-20). This analysis followed the three-step process explained in the March 27, 2017, Social Security Administration interpretive ruling. SSR 17-2p, 2017 WL 3928306 (Mar. 27, 2017). While the ALJ did not find that Mann's impairments met the requirements of any of the listed impairments, that conclusion did not end the analysis. Instead, it required the ALJ to move onto the fourth and fifth steps and determine Mann's RFC.

2.     Substantial Evidence Supports the ALJ's RFC Determination

With respect to the fourth and fifth steps of the ALJ's analysis, Mann disputes several of the ALJ's findings. First, Mann generally questioned the ALJ's ruling, which contradicted the opinion of one of her treating physicians. She also disagrees with the ALJ's consideration of her daily activities and travel as evidence of her ability to work. Finally, she objects to the determination of her ability to hold a job in light of the VE's testimony. (ECF No. 12, at 1-2). For the following reasons, however, the ALJ properly weighed the evidence and substantial evidence supported his decision.

This court's review is limited to the record available to the ALJ when evaluating Mann's claim. Huckabee v. Richardson, 468 F.2d 1380, 1381 (4th Cir. 1972). Mann asserts that at least one of her physicians classified her conditions as disabling. (Id.). But the record does not support Mann's claims. In fact, her primary care physician specifically declined to write a letter stating Mann could not work because he did not believe her symptoms were disabling. (R. 634-35).[6] In evaluating disability claims, the SSA "give[s] more weight to medical opinions from [the claimant's] treating sources." 20 C.F.R. § 416.927(c)(2). ALJs must also consider medical source opinions by agency medical consultants. See 20 C.F.R. § 416.927(c); see also SSR 17-2p, 2017 WL 3928306. While evaluating Mann's claim, the ALJ placed substantial weight on her medical history, and also considered nontreating sources – both of whom found Mann capable of at least light work with some postural limitations – based on their consistency with the evidence contained in the record. (R. at 23-27); see 20 C.F.R. § 416.927(c)(3).

---

[6] In that June 4, 2014, office note, Mann's treating physician, Dr. Robertson, declined to prepare a letter stating she was disabled due to back pain. He wrote: "I explained to her that I didn't think her current back symptoms were sciatic in origin and that I didn't personally feel she is disabled. . . . Before we could discuss this further she stood up and walked out of the office." (R. 635).

In his determination of Mann's RFC, the ALJ provided a two-page summary of Mann's claims and testimony, (R. 21-23), followed by a detailed, five-page analysis of the medical record. (R. 23-27). Overall, the ALJ concluded the record provided evidence of "medically determinable impairments [that] could reasonably be expected to produce" the symptoms Mann alleged, but "the intensity, persistence and limiting effects of [those] symptoms [were] not entirely consistent with the [record]." (R. 23).

The ALJ relied heavily on Mann's treatment history provided by her medical records. (See R. 23-25). While her medical records showed a "number of physical impairments," Mann's physical abilities notated in the record suggested she was capable of performing light work. (R. 23). For example, while Mann has degenerative disc disease, Ibuprofen was the only medication listed on the medication list submitted at the hearing level. (R. 23-24, 312). Throughout most of her treatment history, Mann exhibited normal gait and station, full range of motion, negative indicators on the straight leg raise, symmetrical motor strength and reflexes, and no sensory deficit. (R. 24-25; see also R. 412, 434, 616, 682, 700, 719, 721, 723, 725, 777).

Similarly, the ALJ also found Mann's treatment for headaches was inconsistent with the frequency she asserted in her testimony. (R. 23). Although she testified she experienced disabling headaches once or twice each month, in her medical record, Mann reported having intense headaches only one or two times a year. (R. 426, 681). In June 2014, her primary care physician reported Mann's headaches "seem to have resolved for the most part." (R. 635). Between March 2014 and her hearing date, Mann had only returned to the emergency room once, in January 2016, for a headache that was treated with non-narcotic pain medications. (R. 23, 769-74).

Regarding Mann's mental limitations, the ALJ noted the statements of Claudette Mark in 2010 indicated Mann had significant mental health limitations, but gave them little weight compared to her subsequent counselling and treatment history. (R. 27). Similarly, the ALJ only gave moderate weight to the statements of Dr. Gingras, (R. 313-321), because they were based on a single office visit in October 2008. (R. 26); see also 20 C.F.R. § 416.927(c)(2). In contrast, the rest of Mann's record showed she was able to cope with her mental impairments and had successfully resolved some through counselling. (R. 25-26). Mann had not sought mental health treatment since 2013. (R. 26, 45). When she did seek treatment, she regularly arrived on time, with good hygiene, appropriate dress, and a cooperative mood. (See, e.g., R. 529-30). She also reported having a good relationship with her mother and daughter, and she was able to handle her own personal affairs. (R. 26, 500).

Moreover, consideration of Mann's daily activities was not error. The ALJ determines RFC by considering all relevant medical and other evidence in the record. 20 C.F.R. § 416.929(a). Mann argues that her pain prevents her from conducting daily activities, (ECF No. 3-1, at 1), but her treatment history, her testimony, and her mother's testimony partially contradict her current claim. (See R. 52-60).

The ALJ also noted the other medical source opinions did not support Mann's claim of being disabled. As discussed, in June 2014, Mann's primary doctor refused to write a note saying Mann could not work because he did not feel she was disabled. (R. 634-35). Both medical source opinions from the Agency's consulting physicians also concluded that Mann was not disabled (R. 94, 110). After evaluating both medical source opinions, the ALJ placed greater weight on the opinion on reconsideration (which found Mann more limited), but modified

Mann's RFC based on his review of the medical record. (R. 26). Thus, the ALJ did not err in analyzing the medical source opinions.

Mann also appears to argue that the ALJ erred in evaluating the VE's opinion that missing two or more days of work per month, on average, or requiring unscheduled breaks throughout the day would eliminate competitive employment for Mann. (ECF No. 3-1, at 1; see R. 62). But the ALJ did not rely on that specific opinion – implicitly finding that Mann would not be absent two or more days per month. This finding is supported by substantial evidence.

The ALJ must weigh all of the evidence and determine what is credible and consistent with the objective medical record. Hays, 907 F.2d at 1456. In this case, although Mann is correct that the VE testified concerning the effect of absences and unscheduled breaks, she overlooks that the ALJ did not find Mann's own testimony about the severity of her symptoms entirely credible. (R. 23). That is, the ALJ did not believe that Mann would truly miss two or more days of work, per month, or require repeated unscheduled breaks, if her work activities were sufficiently restricted. (Id.). The evidence, including a lack of medical source opinions detailing such a limitation, supported this conclusion. This court does not undertake to re-weigh evidence. Hays, 907 F.2d at 1456.

In sum, the ALJ's determination of Mann's RFC was not improper. Mann's conditions are significant, which the ALJ accounted for in concluding she was only capable of less than a full range of light work. (R. 27). But contrary to her contention that she cannot carry out the activities of daily living, Mann's treatment history is relatively modest and her conditions are stable with treatment. (See generally R. 412, 434, 616, 682, 700, 719, 721, 723, 725, 777). Despite claiming that severe pain prevents her from performing daily home and work activities, she testified she could perform daily activities at her hearing, she lives alone, drives, visits her

mother regularly, prepares her own meals, and keeps house. (R. 51-53). She has not identified any specific medical record or opinion from her treatment record which she claims the ALJ overlooked or improperly rejected. Rather, she argues generally that the conclusions reached are incorrect because of her own view that she is unable to work. Considering all the evidence before the ALJ – namely the medical source opinions and Mann's conservative treatment history – his RFC finding was supported by substantial evidence.

## C.    The Court's Review Is Limited to the Record

Mann submitted two documents with her Complaint and Motion for Summary Judgement, comprising additional evidence that was not before the ALJ. The first is a February 11, 2017, letter restating the U.S. Department of Education's approval of Mann entering the student-loan discharge program as a result of her "total and permanent disability" (the "DoE Letter"). (ECF No. 12, at 5). The second is a form Dr. Cohen completed on September 2, 2015, stating Mann was unable to perform work in any capacity for twelve months ("Dr. Cohen's Letter"). (Id. at 6-7). When reviewing a decision of the Commissioner, this court's task is to determine whether substantial evidence on the record supported the decision and whether the proper legal standard was applied. 42 U.S.C. § 405(g); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam); Hays, 907 F.2d at 1456. When reviewing an ALJ's decision, therefore, this court is limited to the administrative record. Huckabee, 468 F.2d at 1381.

Accordingly, the court could not consider the new evidence because it has not been examined by the Commissioner in the first instance. In certain situations, the court may remand

the claim upon a showing of new, material evidence.[7]  But to obtain a remand, Mann must prove that:

> (1) the evidence is neither cumulative nor duplicative of evidence submitted in a prior proceeding;
> (2) the evidence is relevant to the determination of disability at the time the claimant filed his application and the Commissioner's decision might reasonably have been different had the new evidence been considered;
> (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and
> (4) the claimant has made a general showing of the nature of the new evidence to the reviewing court.

Campbell v. Astrue, No. 2:11cv563, WL 1213057, at *1, *8 (E.D. Va. March 1, 2013) (internal citation omitted).  Mann did not request a remand or specifically argue that the documents were new and material until her Response to Defendant's Motion (ECF No. 17).  Mann now asserts a remand is warranted because her attorney failed to submit the documents with the rest of her medical record, the records are neither duplicative or cumulative, and they are relevant to the ALJ's determination.  See Pl's Resp. Def's Mot. 1 & 3 (ECF No. 17).

As the Supreme Court stated, a sentence six remand is available "when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding." Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990).  In contrast, both the DoE Letter and Dr. Cohen's Letter are dated before the hearing date (March 7, 2017) and the date of the ALJ's decision (April 12, 2017).  (Compare ECF No. 12, at 5 & 7, with R. 29 & 37).  The other documents Mann mentions, but did not submit, were also allegedly available before the hearing date.  (See ECF No. 3-1).

---

[7] Sometimes referred to as a "sentence six remand," the sixth sentence of 42 U.S.C § 405(g) states that a court "may at any time order additional evidence to be taken before the Commissioner . . . but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C § 405(g).

The attorney who represented Mann at the hearing informed the ALJ that he had a chance to review the file before the hearing.  (R. 37, 176).  To allow additional evidence to be received, the hearing was postponed from December 2016 to March 2017, and her attorney did not object to the evidence received during the postponement.  (R. 38) (admitting exhibits B1A-B11F, R. 67-735).  He also requested the file to be kept open for seven days to submit additional records from emergency room visits.  (R. 38-39; see also R. 14) (adopted as B12F-B19F, R. 736-783).  Despite the postponement and the additional time for post-hearing evidence, neither of the documents Mann submitted here were made available to the ALJ.  (Compare ECF No. 12, at 5-7, with R. 67-783).  Because Mann was represented by counsel, and the documents she submitted should have been available at the time of her hearing, she has not shown good cause for why they were not submitted for the ALJ's review.  See Gadbois v. Colvin, No. 2:15cv107, 2015 WL 10323034, at *9 (E.D. Va. Dec. 28, 2015) (disputing good cause was shown when records from a visit one year before the ALJ hearing were not presented); Burwell-Rainey v. Astrue, No. 3:12cv89, 2012 WL 4854640, at *8 (E.D. Va. Sep. 7, 2012) (holding the alleged failure of an applicant's attorney to submit evidence to the ALJ was not the cause of the claim's denial when the record was held open for seven days and new evidence was submitted and incorporated into the record).

It is also unclear whether the documents would be material.  Dr. Cohen's letter is a summary opinion of her condition; it did not identify a new impairment, suggest an impairment had become more severe, or provide any new facts to the record.  See Brown v. Commissioner of Social Sec., 969 F. Supp. 2d 433, 441 (W.D. Va. Aug. 22, 2013).  Similarly, the fact that another agency classified Mann as disabled does not control Mann's classification by the Social Security

Administration. <u>Bird v. Commissioner of Social Sec. Admin.,</u> 699 F.3d 337, 343 (4th Cir. 2012). Other agency decisions on disability are "evidence of a claimant's condition" but they are "not binding on the SSA." <u>Id.</u> at 344. Thus, while the ALJ could not ignore the DoE Letter, had it been before him, the Commissioner retains final determination of disability for SSI benefits. <u>Id.</u>

Mann properly submitted the documents before this court, but they are not new and she has failed to show a good cause for their exclusion from the record. Those failures are determinative, and the additional records provide no basis for remand.

## V.    <u>RECOMMENDATIONS</u>

For the foregoing reasons, the undersigned recommends that the court DENY Mann's Motion for Summary Judgment, GRANT the Commissioner's Motion for Summary Judgment, and AFFIRM the final decision of the Commissioner.

## VI.    <u>REVIEW PROCEDURE</u>

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this

Court based on such findings and recommendations.  <u>Thomas v. Am</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

The Clerk is DIRECTED to mail a copy of this Report and Recommendation to the pro sé Petitioner and to provide an electronic copy to counsel for Defendant.

/s/
Douglas E. Miller
United States Magistrate Judge

_____
DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

April 9, 2018

## **Clerk's Mailing Certificate**

A copy of the foregoing Report and Recommendation was mailed this date to:

**Marisa Arnetta Mann**
202 Crane Circle, Apartment A
Newport News, Virginia 23608

and an electronic copy was provided to:

**Joel Eric Wilson**
U.S. Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510

Fernando Galindo, Clerk

By_____
Deputy Clerk

_____, 2018